1
2
3
4
5
6
7
8
# UNITED STATES DISTRICT COURT

9
### EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| VALERIE ROACH, | Case No. 1:18-cv-01175-SAB |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING FOR FURTHER PROCEEDINGS |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | (ECF Nos. 19, 20, 21) |
| Defendant. | |

17

18
## I.

## INTRODUCTION

19

Valerie Roach ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from obesity, multinodular goiter, hypertension, degenerative disc disease with spondylosis, left knee and right shoulder dysfunction, and asthma. For the reasons set forth below, Plaintiff's Social Security appeal shall be granted.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 8, 9.)

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on April 24, 2014. (AR 209, 210.) Plaintiff's applications were initially denied on September 10, 2014, and denied upon reconsideration on March 16, 2015. (AR 245-249, 256-260.) Plaintiff requested and received a hearing before Administrative Law Judge Scot Septer ("the ALJ"). Plaintiff appeared for a hearing on April 25, 2017. (AR 50-82.) On July 19, 2017, the ALJ found that Plaintiff was not disabled. (AR 28-42.) The Appeals Council denied Plaintiff's request for review on July 23, 2018. (AR 1-4.)

### A.      Hearing Testimony

Plaintiff testified at a hearing on April 25, 2017, with the assistance of counsel. (AR 56-74.) At the hearing, Plaintiff amended her alleged onset date to February 1, 2016. (AR 55.)

Plaintiff is 5 foot 4 inches tall and weighs 183 pounds. (AR 57.) Plaintiff has been gaining weight and it is hard for her to lose weight since her thyroid was removed. (AR 57.) It is difficult for her to exercise. (AR 58.) Plaintiff is right-handed. (AR 58.) She attended school through the twelfth grade and some college. (AR 74.)

Plaintiff has three children and lives with her sixteen year-old daughter. (AR 56, 57.) Her twenty-one year old son comes over every other weekend to help Plaintiff out. (AR 56.) He will take out the trash and do what needs to be done in the yard. (AR 56.) Plaintiff's daughter washes the dishes and cooks small things for Plaintiff. (AR 56.) She will also help Plaintiff if she needs help dressing, such as with her shoes or shirt. (AR 57.) Plaintiff's daughter will help with laundry and grocery shopping. (AR 57.)

Plaintiff receives temporary Social Security income and child support. (AR 66.) She has a savings account that she is able to manage. (AR 66.) Plaintiff had a worker's compensation claim that was settled but medical is still open for her right shoulder. (AR 66.)

Plaintiff worked in housekeeping for the past fifteen years. (AR 58-59.) She worked for various hotels and Baker's Ballroom downtown. (AR 59.) Plaintiff would carry linen up the

stairs on occasion.  (AR 59.)  They would not give her a cart and she had to carry items up the stairs rather than using an elevator.  (AR 59.)  She was given more rooms to clean that the other girls which made her job harder to complete.  (AR 59.)  She had to push and pull a cart and make beds.  (AR 60.)  She would have someone else move the mattresses because she was already having problems with her back.  (AR 60.)  Plaintiff would be on her feet for the entire time she was working other than a thirty minute lunch break.  (AR 60.)  She worked seven hours a day until they reduced her time to three hours.  (AR 60.)  Plaintiff started flashing the other employees and was getting an attitude.  (AR 60.)  Plaintiff was terminated because they told her she was unable to complete the work because of her injuries.  (AR 60.)  Plaintiff worked at the job for two years.  (AR 60.)  When Plaintiff first started working it was easier, but then they started giving her more work and more stuff to carry.  (AR 61.)  She had to take the stairs because the elevator took too long.  (AR 61.)  It was difficult taking the stairs but she did it.  (AR 61.)  The heaviest weight Plaintiff would regularly carry would be five bottles, about five pounds.  (AR 61-62.)

Plaintiff is unable to do any chores because her body hurts too bad.  (AR 63.)  The most cooking that Plaintiff can do is put a hot dog in boiling water and sit down while it cooks.  (AR 63.)  She mostly heats things in the microwave or does fast food.  (AR 63.)  The last time Plaintiff cooked was last Thanksgiving.  (AR 63.)  She used one of the pots that cooks itself in six-hours.  (AR 63.)

Plaintiff's daughter cooks three times a week.  (AR 63.)  She will prepare simple meals like baked chicken.  (AR 63.)  Plaintiff is on a strict diet and eats baked chicken and boiled vegetables.  (AR 63.)  Plaintiff's daughter puts the dishes in the dishwasher because Plaintiff cannot stand that long.  (AR 63.)  Plaintiff's daughter does the laundry.  (AR 64.)  Plaintiff has not done laundry since 2014.  (AR 64.)  Plaintiff does the grocery shopping.  (AR 64.)  They try to get everything they need in a single trip.  (AR 64.)  Plaintiff will drive to the grocery store which is right across the street.  (AR 65.)  Plaintiff drives to doctor's appointments but otherwise does not go anywhere.  (AR 65.)

///

When she drives her back will get stiff and her legs get tired. (AR 65.) The longest Plaintiff has driven in the last six months was to the pain specialist the prior day. (AR 65.) It was a ten minute drive. (AR 65.) After driving, she is very stiff with pain and achiness. (AR 65.) Plaintiff took the bus to the hearing. (AR 65.) She finds the little bit of walking when taking the bus to be frustrating. (AR 65.) Plaintiff can walk from where she is sitting to the door without pain. (AR 65.) When she walks, she gets pain in her lower back and neck area and knee and her legs get stiff and achy. (AR 66.) Her whole body will ache. (AR 66.)

Plaintiff can stand for a minute or two. (AR 64.) Some days are better than others. (AR 64.) On a good day, her pain will be a six, and on a bad day it will be 10. (AR 64.) Plaintiff has twenty bad days a month. (AR 74.) On these days she stays in bed all day. (AR 74.) She experiences the most pain in her lower back, neck, shoulders and left knee, although her right knee is starting to hurt. (AR 64.)

On an average day, Plaintiff gets up around 10:00 to take her pills and go to the restroom. (AR 66.) She will sleep all day and wake up every hour. (AR 66.) She cannot stay asleep at night or during the day due to the pain. (AR 66-67.) Plaintiff will be in a lot of pain when she wakes up and moving around makes it worse. (AR 67.) The pain pills help some, but they do not last eight hours like they should. (AR 67.) They only last about three to four hours and Plaintiff is still uncomfortable. (AR 67.)

Sometimes Plaintiff will skip a meal. (AR 67.) During the day, Plaintiff listens to music. (AR 67.) She just stays home because it is too difficult to do anything. (AR 67.)

Plaintiff went to physical therapy but it did not help. (AR 67-68.) Plaintiff cannot lift her right shoulder up too high. (AR 68.) It is stiff and painful. (AR 68.) She can lift her arm to shoulder level and anything above that would cause a lot of pain. (AR 68.) Plaintiff does not use her right arm during the day. (AR 68.) Plaintiff was given exercises to do for her shoulder but it only made things worse. (AR 68.) Her doctor told her to stop doing the exercises because it could injure her more. (AR 68.) The doctor told her they wanted to drain the cyst and give her cortisone injections. (AR 69.) She has not had any of the recommended treatment. (AR 69.)

///

Plaintiff has been using a cane for about two years. (AR 69.) It was prescribed by her doctor. (AR 69.) Plaintiff uses the cane all the time. (AR 69.) Plaintiff has a brace for her left knee that she also wears all the time except at night. (AR 69.) Plaintiff only takes Norco and it does not work for the pain. (AR 70.) Her doctor just increased her dosage the prior day. (AR 70.) When she takes the medication it might reduce the pain for an hour or two and sometimes it will last four hours. (AR 70.) Plaintiff took her medication at about 6:00 that morning. (AR 70.) She usually takes it at 7:00, 3:00 and 11:00. (AR 70.) When she takes her medication she gets forgetful and has brain fog. (AR 70.) This has been happening for two years. (AR 70.) Plaintiff goes to bed between 7:00 and 10:00 and she sleeps all throughout the day. (AR 70-71, 73.) She was doing that even when she was working. (AR 71.) At the end of her job, she was working 2 to 3 hours a day. (AR 71.) She was full-time when she started but they cut her hours because she did not complete the work. (AR 71.)

It is hard for Plaintiff to function and sit and she cannot stand or walk for too long without being in pain. (AR 71.) She has problems talking and communicating with people. (AR 71.) This has been going on for a while. (AR 71.)

Plaintiff also cannot hold things with her right arm. (AR 72.) She is able to make a fist, but mostly uses her left arm, even to feed herself, because her right arm is weak. (AR 72.) She uses both her hands to drink. (AR 72.) If Plaintiff uses her hand she gets a shocking sensation that runs through it and it will get weak. (AR 72.) She uses her left hand to open doors. (AR 72.) Plaintiff is able to write if she takes her time and she can text and use her phone. (AR 72-73.) She does not do much with her left hand. (AR 73.) Plaintiff can lift less than five pounds using both hands. (AR 73.)

Jose Chaparro, a vocational expert, also testified at the hearing. (AR 75-79.)

**B.      ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2017.

- Plaintiff has not engaged in substantial gainful activity since the alleged onset date of

June 1, 2012.

- Plaintiff has the following severe impairments: hypertension, degenerative disc disease with spondylosis, left knee and right shoulder dysfunction, and asthma.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

- Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). Specifically, Plaintiff can lift and/or carry ten pounds frequently and twenty pounds occasionally. She can stand and/or walk for four hours out of an eight-hour workday with the assistance of a cane. She can sit for six hours out of an eight-hour workday. Plaintiff can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, balance, kneel, crouch, crawl, and reach over head with the right upper extremity. She can frequently reach in all other directions with the right upper extremity. She is to avoid all exposure to extreme cold, unprotected heights and moving machinery, and she is to avoid concentrated exposure to respiratory irritants such as dust, fumes, and gases.

- Plaintiff is unable to perform any past relevant work.

- Plaintiff born on August 11, 1976, and was 35 years old which is defined as a younger individual age 18-49 on the alleged disability onset date.

- Plaintiff has at least a high school education and is able to communicate in English.

- Transferability of job skills is not an issue in this case because Plaintiff's past relevant work is unskilled.

- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

- Plaintiff has not been under a disability as defined in the Social Security Act from June 1, 2012, through the date of this decision.

(AR 33-42.)

/ / /

# III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[2] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the

---

[2] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R. §404.1501 et seq., however Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq. The regulations are generally the same for both types of benefits. Therefore, further references are to the disability insurance benefits regulations, 20 C.F.R. §404.1501 et seq.

Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

**IV.**

**DISCUSSION AND ANALYSIS**

Plaintiff contends that the residual functional capacity assessment is not supported by substantial evidence because the ALJ gave great weight to the opinions of Drs. Rush and Wagner and did not adopt all their opined limitations.  Plaintiff argues that the ALJ failed to provide reasons to reject Dr. Rush's opinion that Plaintiff could only stand and walk two hours and was limited in stooping and Dr. Wagner's opinion that Plaintiff could not stand or walk for more than thirty minutes or sit for more than an hour despite giving both their opinions great weight after finding them consistent with the medical record.

Defendant counters that Plaintiff has only set forth a narrow challenge to the ALJ's evaluation of the opinions of Drs. Rush and Wagner and has waived any other challenge.  Defendant argues that the ALJ is not required to accept any doctor opinion in its entirety and the ALJ evaluated the medical evidence and the opinions of Drs. Brox, Rush, and Wagner.

Defendant contends that the ALJ's rejection of Dr. Brox's opinion provides sufficient rational for the rejection of Dr. Rush's similar opinions. Further, Defendant argues that Dr. Wagner's opinion that Plaintiff can stand and walk four hours is consistent with the other opinions in the record and his sitting limitations are inconsistent within the opinion itself and the ALJ was entitled to reject the inconsistent opinion. Defendant contends that the failure to include a limitation addressing stooping was a typographical error and Plaintiff has failed to show any harm as the VE opined that a limitation of occasional stooping would not preclude other work and the DOT descriptions for the jobs identified indicate that no stooping is required.

Plaintiff replies that because the ALJ gave no reasons at all to reject the opinions of Drs. Rush and Wagner he committed error and this action must be remanded. Plaintiff contends that it is improper to reallocate the rejection of Dr. Brox limitations to Dr. Rush because the ALJ rejected the limitations as they were based on Worker's Compensation law rather than the Social Security regulations. Plaintiff argues that the ALJ cannot implicitly reject opinion evidence and leave it up to the reviewing court to speculate as to why. Plaintiff contends that the ALJ did not raise the inconsistency in Dr. Wagner's opinion and the opinion cannot be saved by post hac rationalizations. Finally, Plaintiff asserts that the failure to address stooping is not harmless error when considered with the other errors in the ALJ's opinion.

### A.    Physician Opinions

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). "Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(1)-(2)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)(3)). The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific,

legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. Thomas, 278 F.3d at 957.

After a review of the medical record (AR 36-39), the ALJ considered the opinions of Drs. W. Ramsey, M. Lewis, T. Brox, S. Mamigonian, T. Fernandez, Rush, Wagner, Pham and De la Rosa.

Plaintiff was examined by Dr. Lewis on July 3, 2012. (AR 1128-1143.) On examination, Plaintiff was found to have a lot of peripatellar edema with lateral joint space tenderness. (AR 1137.) There was crepitus to both passive and active range of motion. (AR 1137.) Plaintiff had patellar apprehension and patellar grind. (AR 1137.) When the patella was moved laterally you could palpate the grind causing pain and Plaintiff would tear up. (AR 1137-1138.) Plaintiff had very mild positive anterior drawer test and negative posterior drawer test. (AR 1139. There was no edema noted to the ankle or foot. (AR 1138.) Plaintiff was on modified duty with no bending, lifting, and pushing. (AR 1133.)

On November 18, 2013, Dr. Ramsey, as an agreed medical examiner in her Worker's Compensation action, examined Plaintiff. (AR 507-509.) Physical examination notes that Plaintiff walks gingerly, but is able to weight bear with a minor limp. (AR 508.) Plaintiff was wearing a long hinged brace. (AR 508.) She exhibited normal posture on standing. (AR 508.) The right trochanter remains tender, the left minimally so. (AR 508.) Her left knee exhibited normal alignment with no effusion detected. (AR 508.) Measurement of the right thigh measured one inch larger than the left consistent with some diffuse atrophy. (AR 508.) The left knee was diffusely tender. (AR 508-509.) Ligament testing was intact without pain on gentle stress. (AR 509.) Range of motion was unremarkable with some guarding and resistance. (AR 509.) Plaintiff was able to actively extend the right knee to almost full extension while seated. (AR 509.) Patellar tracking was stable and no crepitation was clinically evident. (AR 509.) Patellar compression sign was negative and there were no signs of meniscus entrapment or other

1    internal mechanical difficulties identified.  (AR 509.)  Plaintiff's resistance prevented a thorough

2    McMurray's maneuver.  (AR 509.)

3         Dr. Ramsey noted that despite her complaints, Plaintiff had improved noticeably over the

4    past nine months when she refused examination of her knee and was confined to a wheelchair,

5    avoiding all weight bearing.  (AR 510.)  She was now walking, although with a limp, and using a

6    knee brace although Dr. Ramsey stated he did not know the reason as there was no knee

7    instability noted.  (AR 510.)  There was no swelling and the ligaments were intact without

8    significant discomfort on stress.  (AR 510.)  He was unable to determine clinically if Plaintiff

9    had a meniscus unstable problem but was skeptical that this was a significant issue.  (AR 511.)

10   He remained concerned about Plaintiff's apprehension regarding her knee but saw no clinical

11   indications or imaging indications for surgical intervention.  (AR 511.)  He recommended

12   continued efforts to rehabilitate the knee with exercise and to wean Plaintiff from usage of the

13   brace and medications.  (AR 511.)  Plaintiff did not have a hip joint problem.  (AR 511.)  Dr.

14   Ramsey opined that Plaintiff had some tenderness in her hip consistent with trochanteric bursitis,

15   but this was not disabling and she had no impairment as a result.  (AR 512.)  Plaintiff was

16   restricted from deep squatting or prolonged weight bearing.  (AR 512.)

17        Plaintiff had a complete internal medicine evaluation by Dr. Rush on July 10, 2014.  (AR

18   1296-1300.)   Plaintiff   appeared   with   a   knee   brace   on   her   right   knee.   (AR 1297.)

19   Musculoskeletal examination revealed normal range of motion.  (AR 1298-1299.)   Motor

20   strength was 5/5 in the upper extremities and lower right extremity and 3/5 in the lower left

21   extremity.  (AR 1299.)  There was normal muscle bulk and tone and handgrip strength was

22   normal bilaterally.  (AR 1299.)  Plaintiff's gait was abnormal.  (AR 1299.)  Without her knee

23   brace, she walked with a moderate limp favoring the lower left extremity.  (AR 1299.)  She was

24   able to walk on her heels and toes.  (AR 1299.)  Romberg was normal.  (AR 1299.)  Alternating

25   hand movements and finger to nose were normal.  (AR 1299.)  Plaintiff did not use an assistive

26   device.  (AR 1299.)

27        Dr. Rush found there was 100% range of motion on examination with no swelling and no

28   evidence of knee instability.  (AR 1299.)  There did not seem to be an ACL tear and anterior and

posterior drawer signs were negative. (AR 1299.) Lateral stability was noted although Plaintiff was weak on the left side and walked with a limp. (AR 1299.) Dr. Rush opined that Plaintiff could push, pull, lift, and carry 20 pounds occasionally and 10 pounds frequently; walk and stand for two hours in an eight hour day with rest periods. (AR 1299.) Plaintiff had no sitting limitations. (AR 1300.) Plaintiff cannot bend or kneel on the left side and cannot crawl or crouch. (AR 1300.) Plaintiff cannot walk on uneven terrain or climb ladders. (AR 1300.)

On September 10, 2014, Dr. Pham, an agency physician, reviewed the medical record and found that Plaintiff had the following residual functional capacity. (AR 187-191.) Plaintiff could occasionally lift and carry twenty pounds and frequently lift and carry ten pounds. (AR 190.) She can stand and or walk four hours and sit more than six hours in an eight-hour workday. (AR 190.) Plaintiff is unlimited in stooping; can occasionally climb stairs and ramps, balance, kneel, crouch, and crawl; and never climb ladders, ropes, or scaffolds. (AR 190.) Plaintiff had no manipulative limitations. (AR 191.) Plaintiff should avoid unprotected heights and prolonged walking on uneven terrains. (AR 191.)

On January 21, 2015, Dr. De la Rosa, an agency physician, reviewed the medical record on reconsideration. (AR 218.) Dr. De la Rosa adopted the prior residual functional capacity of sedentary. (AR 218, 220-221.) He found that Plaintiff's allegations of worsening pain were not functionally supported. (AR 218.) Grip strength was effort related and not given any weight. (AR 218.) Plaintiff annual examination did not reflect any grip strength findings and there was no evidence of atrophy or radicular findings to support the weakness reported. (AR 218.) Plaintiff's pain was considered. (AR 218.) Plaintiff's asthma was not severe as there were no episodes of flare ups supported or emergency room or hospital visits. (AR 218.) Weight was given to the Worker's Compensation findings as they were more longitudinal as well as current which are consistent with chronic pain syndrome. (AR 218.)

On October 17, 2015, Dr. Fernandez placed Plaintiff on modified duty with no lifting over fifteen pounds, no pushing or pulling over fifteen pounds of force, and no reaching above the shoulders. (AR 1505.)

/ / /

On May 10, 2016, Plaintiff had a qualified medical examination by Dr. Brox. (AR 1448-1458.) Examination of Plaintiff's ankles and feet were unremarkable. (AR 1449.) Plaintiff was found to have right shoulder pain that arose out of her employment. (AR 1452.) Dr. Brox found that Plaintiff was not restricted from work due to her right shoulder problems, and that she was restricted from any but sedentary work due to her back and left knee. (AR 1453.) Dr. Brox opined that Plaintiff was limited to 1-2 hours standing, walking, sitting, bending, squatting, climbing, twisting, reaching, crawling, driving, grasping, and pushing and pulling. (AR 1456.)

On June 16, 2016, Dr. Mamigonian completed a residual functional capacity assessment for Plaintiff. (AR 1461-1464.) Dr. Mamigonian stated that during an eight hour workday, Plaintiff's pain would frequently be severe enough to interfere with the attention and concentration necessary to sustain simple, repetitive work and that Plaintiff was incapable of even low stress work due to severe pain. (AR 1462.) He opined that Plaintiff cannot sit or stand for more than fifteen minutes at one time. (AR 1462-1463.) Plaintiff can sit and stand/walk less than two hours in an eight out day; and would need five to six unscheduled breaks in addition to the usual breaks in a workday. (AR 1463.) Plaintiff can rarely lift less than ten pounds and never lift ten pounds or more. (AR 1463.) Plaintiff can never twist, stoop, bend, crouch, or climb ladders or stairs. (AR 1463.) Plaintiff has severe limitations in doing repetitive reaching, handling, or fingering. (AR 1463.) Plaintiff is likely to have good and bad days and would miss more than four days per month due to her impairments or medical treatment. (AR 1464.)

On March 16, 2017, Dr. Wagner performed a comprehensive internal medical examination of Plaintiff. (AR 1582-1588.) He noted that Plaintiff was able to get up from a chair in the waiting room and walk with an exaggerated slow rate of speed to the back of the examination room without assistance. (AR 1585.) Plaintiff sat comfortably and was able to get on and off the examination table and bend at the waist to take off her shoes and knee brace while using her left hand slightly more than the right. (AR 1585.) He also noted that her presentation appeared slightly over dramatic and that it would be extraordinarily helpful to observe her getting around when she did not know that she was being observed as he found her presentation surprising. (AR 1585.) Plaintiff's extremities were noted to be warm without cyanosis, clubbing

or edema. (AR 1586.) Plaintiff declined to attempt to stand or walk on her heels and toes. (AR 1586.) Her station was slightly bent forward at the lumbar back and her gait showed a mild limp on the left leg. (AR 1586.) Finger to nose was normal and Romberg was negative. (AR 1586.) Plaintiff came in with a back brace, knee brace and a cane. (AR 1586.) Dr. Wagner noted that Plaintiff did have a slight limp on the right leg when walking without the cane so it might be necessary for long distances or on uneven terrain. (AR 1586.) Again he noted that it would be very helpful to observe Plaintiff when she did not know that she was being observed to determine whether it was necessary at other times. (AR 1586.)

Dr. Wagner found that Plaintiff's left knee examination was fairly benign, she complained of low back pain radiating to the right buttock, and limitations in range of motion of the right shoulder but fairly good strength. (AR 1587.) Dr. Wagner opined that Plaintiff was able to stand and walk up to four hours; a cane was necessary for long distances or uneven terrain; she can lift 20 pounds occasionally and 10 pounds frequently. (AR 1588.) Plaintiff had no sitting limitations. (AR 1588.) Plaintiff can frequently stoop, crouch, kneel, and crawl; occasionally climb steps and stairs; and should avoid climbing ladders. (AR 1588.) Plaintiff can occasionally reach over head on the right and frequently reach on the right; and has no other manipulative limitations. (AR 1588.) Plaintiff should avoid unprotected heights and heavy machinery and prolonged exposure to concentrated chemicals, dust, fumes, and gases and extreme cold temperatures. (AR 1588.) Dr. Wagner completed a medical source statement that same day. (AR 1589-1594.) Dr. Wagner additionally opined that Plaintiff can only sit for one hour at a time without interruption; and can stand or walk for thirty minutes at one time without interruption. (AR 1590.) Inconsistent with his written opinion, Dr. Wagner opined that Plaintiff can occasionally be exposed to unprotected heights and moving mechanical parts.[3] (AR 1593.)

The ALJ provided the following discussion of the medical opinions in the record.

As for the opinion evidence, in determining the claimant's residual functional capacity no single assessment has been completely adopted as the residual functional capacity determined herein. The undersigned finds the limited light

---

[3] Although there is an inconsistency in the two opinions, the ALJ adopted the more restrictive opinion so the court finds no harm by the failure to address why the more restrictive opinion was adopted.

limitations adopted herein generously consider the claimant's subjective complaints. These have been balanced with what the claimant has admitted she can do and the objective medical diagnostic and clinical findings discussed herein.

The reports of W. Ramsey, M.D., M. Lewis, M.D., T. Brox, M.D., S. Mamigonian, D.C., and T. [F]ernandez, M.D., were prepared in the context of the adversarial workers' compensation claim system Exhibits 5F-8F 16F. 18F-19F and 20F. Medical reports generated in the context of a workers' compensation claim are adversarial in nature. The physicians retained by either party in the context of workers compensation cases are often biased and do not provide truly objective opinions. The claimant's treating physician in the context of a workers compensation claim often serves as an advocate for the claimant and describes excessive limitations to enhance the claimant's financial recovery. In addition, the definition of disability in a workers' compensation case is not the same as a Social Security disability case. Workers' compensation cases look only at the claimant's ability to return to the job being performed at the time of the injury. Finally, whether the claimant is disabled is a determination reserved to the Commissioner (20 CFR 404.1527(d) and 416.927(d) and SSR 96-5p). Therefore, the credibility and relevance of the opinions of these doctors must be carefully assessed because of the involvement with the workers' compensation claim.

The term "temporarily totally disabled" (TTD) is used in workers' compensation law to indicate that at a certain moment or for a certain period in time a worker is unable to return to the job being performed at the time of the injury with or without modifications to the job requirements. This is not the same criteria used to determine disability under the Social Security Act. Therefore, the conclusion by a physician that a claimant is TTD in the context of a workers' compensation case is not relevant with regard to an application under the Social Security Act. The objective clinical and diagnostic evidence used by the physician to come to that conclusion and included in the physician's reports has been considered. This objective evidence is consistent with a determination that the claimant could do work with the limitations noted herein.

The undersigned has considered and gives little weight to Dr. Ramsey who opined preclusions from deep squatting or prolonged weight bearing; Dr. Lewis who opined no bending, lifting, and pushing; Dr. Fernandez who opined no lifting over fifteen pounds and no reaching above the shoulder; and Dr. Brox who opined sedentary limitations Exhibits 5F p. 7 8F p. 48 18F pp. 7 and 10 and 20F p. 41. These opinions were based upon workers' compensation law rather than social security regulations as discussed above; therefore, the limits are not relevant to SSA definitions. The undersigned has given little weight to this opinion because it is not supported by objective evidence and it is inconsistent with the record as a whole. The doctors primarily summarized in the treatment notes the claimant's subjective complaints, diagnoses, and treatment, but he did not provide objective clinical or diagnostic findings to support the functional assessment. This opinion is inconsistent with the objective findings already discussed above in this decision which show mild to moderate objective findings. This opinion is also inconsistent with the claimant's admitted activities of daily living that have already been described above in this decision. Therefore these are given little weight.
. . .
The undersigned has considered and gives great weight to Dr. Rush and Dr. Wagner who opined light limitations Exhibits I0F 23F and 24F. These were based on in-person examinations, the assessments are complete, specific facts are cited upon which the conclusion are based, and are substantially/largely consistent with the record as a whole. Therefore, these are given great weight.

The undersigned has considered and gives great weight to the State agency review physicians who opined light limitations Exhibits IA 2A 5A and 6A. As set forth in Social Security Ruling 96-6p, State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the Social Security disability programs, the rules in 20 CFR 404.1527(e) and 416.927(e), and in the evaluation of the medical issues in disability claims under the Act. As members of the teams that make determinations of disability at the initial and reconsideration levels of the administrative review process (except in disability hearings) they consider the medical evidence in disability cases and make findings of fact on the medical issues including but not limited to the existence and severity of an individual's impairments, the existence and severity of an individual's symptoms, whether the individual's impairments meets or is equivalent in severity to the requirements for any impairment listed in 20 CFR part 404, subpart P, appendix 1 (the Listing of Impairments) and the individual's residual functional capacity. In the present instance, the State agency consultants access to and review of the entire medical evidence render their opinions both current and comprehensive. Therefore they are given great weight.

(AR 39-41.)

In her opening brief, Plaintiff only raises a challenge to the ALJ's evaluation of the opinions of Drs. Rush and Wagner. Plaintiff has not challenged the ALJ's findings as to any of the other medical opinions and the Court finds that she has therefore waived any issue with the ALJ's evaluation of the other medical opinions in the record. Ghanim, 763 F.3d at 1165; Ruiz v. Comm'r of Soc. Sec. Admin., 490 F. App'x 907, 908 (9th Cir. 2012).[4]

1. Dr. Rush

Plaintiff argues that the ALJ erred by rejecting Dr. Rush's opinion that Plaintiff can only walk and stand two hours in an eight-hour workday and cannot stoop (bend).[5] Defendant

---

[4] Unpublished dispositions and orders of the Ninth Circuit issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1. Ninth Circuit Rule 36-3(b).

[5] Plaintiff contends that Dr. Rush found that Plaintiff could not stoop, but Dr. Rush did not find that Plaintiff could not stoop. He found that Plaintiff cannot bend on the left side. (AR 1300.) To stoop is "to bend the body or a part of the body forward and downward sometimes simultaneously bending the knees." Stoop Definition, https://www.merriam-webster.com/dictionary/stoop. Dr. Rush's finding that Plaintiff cannot bend to the left does not address her ability to bend forward and downward.

Review of the record reveals that the only opinion finding that Plaintiff was unable to stoop was that of Dr. Mamigonian, a chiropractor. Dr. Mamigonian opined that Plaintiff could never stoop (AR 1463), but the ALJ found that he was not an acceptable medical source. (AR 40.) Under the regulations in effect at the time, a chiropractor is considered an "other source," 20 C.F.R. § 404.1513(d)(1) (2015); and the ALJ must give specific reasons germane to the witness in discounting testimony, Molina, 674 F.3d at 1111. The ALJ found that Dr. Mamigonian primarily summarized the treatment notes of Plaintiff's complaints, her diagnosis, and treatment, but did not provide objective clinical or diagnostic tests to support the functional assessment. (AR 40.) Further, the ALJ found that the opinion was inconsistent with the generally mild to moderate objective findings in the record and Plaintiff's admitted activities of daily living. (AR 40.) Plaintiff has not challenged these findings and the Court finds that the ALJ provided germane reasons to reject the opinion of Dr. Mamigonian. Ghanim, 763 F.3d at 1165.

counters that the ALJ rejected the same limitation which was opined by Dr. Brox and therefore, there was no error as the same reasoning applies to Dr. Rush's identical opinion. Defendant also argues that the stooping limitation can be considered a clerical error and is further harmless because the jobs the VE opined that Plaintiff can do require no stooping. Plaintiff replies that the ALJ rejected the opinion of Dr. Brox because it was based on worker's compensation law rather than social security regulations and that limiting terms do not correlate to social security definitions. Plaintiff further contends that the failure to include no stooping is not harmless due to the other errors that the ALJ made in rejecting the physician opinions.

While Plaintiff argues that the ALJ rejected Dr. Brox' opinion because it was based on worker's compensation law, the ALJ did not reject Dr. Brox opinion solely for this reason. The ALJ discussed worker's compensation law and did find that the limitations were not relevant to the social security regulations, however, the ALJ also found that the opinion was inconsistent with the objective findings in the record and Plaintiff's admitted activities of daily living. (AR 40.) Inconsistency with the objective findings in the medical record and a claimant's activities of daily living are specific and legitimate reasons to reject a physician opinion. See Thomas, 278 F.3d at 957 (9th Cir. 2002) (clinical findings); Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (inconsistency with medical record); Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014) (inconsistencies between opined limitations and claimant's daily activities may justify rejecting physician opinion); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600–02 (9th Cir.1999) (inconsistency with medical record and claimant's reported activities). Plaintiff did not challenge the reasons that the ALJ gave to reject Dr. Brox' opinion in her opening brief and has therefore waived the issue. Ghanim, 763 F.3d at 1165; Ruiz, 490 F. App'x at 908.

As the Ninth Circuit has held, a reviewing court is able to draw specific and legitimate inferences from the ALJ's opinion. Magallanes v. Bowen, 881 F.2d 747, 754 (9th Cir. 1989). The Court can consider the reasons given to reject Dr. Brox' opinion that Plaintiff was limited to sitting, standing, and walking one to two hours in an eight-hour work day. (AR 40, 1456.)

In this instance, the ALJ provided specific and legitimate reasons to reject the physician testimony by summarizing the facts and conflicting clinical evidence and medical opinion

evidence in a detailed and thorough fashion, stating his interpretation and making findings. Magallanes, 881 F.2d at 755. It is reasonable to draw the inference that the reasons that the ALJ provided to reject Dr. Brox' opinion that Plaintiff can only walk or stand one to two hours in an eight-hour day are the same reasons that the ALJ rejected Dr. Rush's opinion that Plaintiff can only stand or walk two hours in an eight-hour day. See Lenhart v. Astrue, 252 F. App'x 787, 789 (9th Cir. 2007) (Magallanes held that it is proper for a "court to read that part of the ALJ's decision discussing one physician's findings and opinion, and draw inferences relevant to another's findings and opinions); Elmore v. Colvin, 617 F. App'x 755, 758 (9th Cir. 2015) (ALJ implicitly rejected the other physician opinions that were incorporated into the physician opinion that was rejected).

Similarly, the ALJ rejected Dr. Lewis' opinion that Plaintiff could not bend finding the opinion was inconsistent with the objective findings in the record and Plaintiff's admitted activities of daily living. (AR 40.) It is reasonable to infer that the ALJ rejected Dr. Rush's opinion that Plaintiff cannot bend on the left side for these same reasons. (AR 1300.) Plaintiff did not raise any challenge to the rejection of Dr. Lewis' opinion and has therefore waived any challenge to the ALJ's findings. Ghanim, 763 F.3d at 1165.

The ALJ provided specific and legitimate reasons to reject the limitations opined by Drs. Brox and Lewis and the Court can infer from the opinion that the same reasons apply to reject the same limitations opined by Dr. Rush. Therefore, substantial evidence supports the rejection of Dr. Rush's opinion that Plaintiff can only walk or stand two hours in an eight-hour day and cannot bend on the left side.[6]

### 2. Dr. Wagner

Plaintiff argues that the ALJ erred by rejecting Dr. Wagner's opinion that Plaintiff could only sit one hour and walk/stand thirty minutes at one time. Defendant counters that the ALJ was not required to adopt inconsistent findings.

/ / /

---

[6] It is not clear that Plaintiff is actually challenging the failure to adopt the bending limitation as Plaintiff has argued that the limitation was no stooping.

In the medical source statement, Dr. Wagner opined that Plaintiff can walk or stand for four hours each in an eight hour workday, but that he can only stand or walk for thirty minutes at one time without interruption. (AR 1590.) Similarly, Dr. Wagner opined that Plaintiff can sit for eight hours in an eight hour workday, but can only sit for one hour without interruption. (AR 1590.) These findings are not inconsistent as one addresses that total time that Plaintiff can sit, stand or walk in an eight-hour day, and the other addresses the amount of time that Plaintiff can do the activity at one time before needing to change position. The ALJ did not reference Dr. Wagner's findings that Plaintiff was limited in the amount of time she could sit, stand, or walk before being interrupted in the opinion. Nor did the ALJ provide any reason to reject the limitations despite giving great weight to the opinion of Dr. Wagner finding it was based on an in-person examination, the assessment was complete, specific facts were cited upon which the conclusion are based, and it was substantially/largely consistent with the record as a whole. (AR 40.)

Plaintiff also argues that the ALJ did not address Plaintiff's ability to stoop. While the ALJ is not required to accept the entire opinion of any physician, Magallanes, 881 F.2d at 753; Russell v. Bowen, 856 F.2d 81, 83 (9th Cir. 1988), he must explain why "significant probative evidence has been rejected." Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (quoting Cotter v. Harris, 642 F.2d 700, 706 (3d Cir.1981). Here, the ALJ did not discuss Dr. Wagner's finding that Plaintiff was limited in the amount of time that she was able to sit, stand, or walk without interruption or that she could frequently stoop. Such evidence is significant and probative because it can impact whether work exists for Plaintiff in the economy and the ALJ did not present a hypothetical including these limitations to the VE at the hearing. The ALJ erred by failing to provide any reason to reject Dr. Wagner's opinion that Plaintiff could only sit for one hour and stand or walk for thirty minutes without interruption and frequently stoop.

The Court finds that the medical record is fully developed and further remand for development of the medical record would serve no purpose. The credit-as-true rule is "specifically limited to cases 'where there are no outstanding issues that must be resolved before

a proper disability determination can be made[.]" ' <u>Vasquez v. Astrue</u>, 572 F.3d 586, 593 (9th Cir.2009) (quoting <u>Varney v. Secretary of Health and Human Services</u>, 859 F.2d 1396, 1398–99, 1401 (9th Cir.1988)).  However, the Ninth Circuit has found that the credit as true rule may be applied even where the application would not result in remand for immediate payment of benefits.  <u>Vasquez</u>, 572 F.3d at 593.

As the Court finds that no purpose would be served by remanding this matter for further development of the medical record, the credit as true rule should apply to Dr. Wagner's opinion testimony in this matter.  In this instance, remand for payment of benefits is inappropriate as it is unclear whether Plaintiff would be disabled even with the additional limitations opined by Dr. Wagner.  There was no hypothetical presented to the VE including the additional functional limitations opined by Dr. Wagner.  In cases where the testimony of a VE has failed to address functional limitations as established by improperly discredited evidence, the Ninth Circuit has "consistently remanded for further proceedings rather than payment of benefits."  <u>Harman v. Apfel</u>, 211 F.3d 1172, 1180 (9th Cir. 2000).  A remand for further proceedings is appropriate in this case.  Upon remand, the hypothetical presented to the VE shall include the additional limitations that Plaintiff can sit one hour, walk for thirty minutes, and stand for thirty minutes without interruption and frequently stoop.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**V.**

**CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ did not err in rejecting in part the opinion of Dr. Rush but erred by failing to address additional limitations opined by Dr. Wagner. This matter shall be remanded for the ALJ to present the hypothetical consistent with this opinion to the vocation expert.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED and this matter is remanded back to the Commissioner of Social Security for further proceedings consistent with this order. It is FURTHER ORDERED that judgment be entered in favor of Plaintiff Valerie Roach and against Defendant Commissioner of Social Security. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: __**July 10, 2019**__

_____
UNITED STATES MAGISTRATE JUDGE